```
 1                  IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF COLORADO
 2
     Criminal Action No. 12-cr-00010-MSK
 3
     UNITED STATES OF AMERICA,
 4
          Plaintiff,
 5
     vs.
 6
     JAMES R. SWITZER,
 7
          Defendant.
 8   _____

 9                        REPORTER'S TRANSCRIPT
                          (Sentencing Hearing:  Order)
10   _____

11         Proceedings before the HONORABLE MARCIA S. KRIEGER,

12   Judge, United States District Court for the District of

13   Colorado, commencing at 9:13 a.m., on the 30th day of October,

14   2012, in Courtroom 901A, United States Courthouse, Denver,

15   Colorado.

16                              APPEARANCES

17         GUY TILL, Assistant U.S. Attorney, 1225 17th Street,

18   Suite 700, Denver, Colorado, 80202, appearing for the

19   plaintiff.

20         JONATHAN WILLETT, Attorney at Law, 1331 17th Street,

21   Suite 608, Denver, Colorado, 80202, appearing for the

22   defendant.

23
                       THERESE LINDBLOM, Official Reporter
24                901 19th Street, Denver, Colorado 80294
                  Proceedings Reported by Mechanical Stenography
25                     Transcription Produced via Computer
```

1     (The following proceedings were had and entered of
2 record after the Court heard the arguments of counsel and
3 statement of defendant:)
4     *THE COURT:*  Thank you.  I'll announce the sentence I
5 intend to impose.  Of course, counsel, you'll have an
6 opportunity to make legal objections before judgment is
7 actually entered.  If you believe that the sentence and my
8 reasoning is premised upon error or if I raise an issue that
9 you did not have adequate opportunity to consider and address,
10 I invite you to request a continuance.
11     Imposition of a sentence in a federal criminal case is
12 governed by a number of statutes.  The umbrella statute is 18
13 U.S.C. Section 3553.  In imposing sentence in this case, and in
14 other cases -- in fact, all cases -- the Court is required to
15 consider the objectives and the factors set forth in this
16 statute.  The statute requires that the sentence be sufficient
17 but not greater than necessary in order to satisfy these
18 objectives; the sentence must reflect the seriousness of the
19 offense; promote respect for the law; provide just punishment;
20 adequately deter criminal conduct; protect the public from
21 further crimes by the defendant; provide the defendant with
22 needed educational or vocational training, medical care, or
23 other correctional treatment in the most effective manner.
24     It requires me in fashioning a sentence to consider
25 particular factors:  The nature and circumstances of the

1  offense; the history and characteristics of the defendant; the
2  kinds of sentences that are available; the sentence prescribed
3  by the federal sentencing guidelines; the need to avoid
4  unwarranted sentence disparities among defendants with similar
5  records found guilty of similar conduct; and in the appropriate
6  case, the need for restitution.
7       At the beginning of this hearing, I identified the
8  documents that I had studied prior to the hearing, confirmed
9  with counsel that they and the defendant had had an opportunity
10 to review those documents, asked if there were any additional
11 documents.  Two additional documents were identified, and I
12 acknowledge that I had studied those as well.  I asked whether
13 there was any dispute as to the calculation of the sentence
14 under the federal sentencing guidelines, and there was one.
15 There are a number of requests for departure and a number of
16 requests for variance.
17      We begin with the calculation under the guidelines.
18 Mr. Switzer is convicted of violating 18 U.S.C. Section
19 922(g)(1) and 924(a)(2) and 2, by being a prohibited person in
20 possession of a firearm.
21      With regard to the calculations under the guidelines,
22 the parties have agreed that there is no factual dispute with
23 the contents of the presentence report.  Therefore, I treat the
24 facts in the report as true.
25      The Base Offense Level for violation of 18 U.S.C.

1  Section 922(g)(1) is set by Section 2K2.1 of the guidelines.
2  Here it is set at level 20, based on the defendant's prior
3  felony conviction of a crime of violence, vehicular eluding
4  resulting in injury.  This is a conviction out of the
5  Broomfield County Court, Case No. 2006-cr-4.  The first
6  argument that is made by the defendant is that vehicular
7  eluding should not be regarded as a crime of violence.  And the
8  conviction here, the defense argues, is based on a conspiracy
9  to engage in vehicular eluding; and, therefore, there needs to
10 be proof of an act in support of the conspiracy conviction.
11 And, therefore, in the absence of an automatic element of a
12 crime of violence in the statutory provision, it cannot be a
13 crime of violence.
14         The defense argument is not well placed.  **United
15 States v. Martinez**, a Tenth Circuit decision found at 602 F.3d
16 1166, a 2010 decision, distinguishes between the violent felony
17 determination under the armed criminal act, ACCA, and the
18 violent crime definition under the sentencing guidelines.  And
19 although I believe the defendant is correct in arguing with
20 regard to conspiracy in applying ACCA, as the Tenth Circuit
21 notes, that definition does not apply under the sentencing
22 guidelines.  Quite to the contrary, the sentencing guidelines
23 provide that the term "crime of violence" in Section 4B1.2
24 includes the offenses of aiding and abetting, conspiring and
25 attempting to commit such offenses that is found in the note

1   following the section.  And the Tenth Circuit notes that -- in
2   *Martinez*, that the Court is required not to follow the
3   definition of the ACCA for a violent felony, but, instead, a
4   crime of violence under Section 4B1.2.
5          The defense is quite correct that the Court engages in
6   a categorical definition and turns to the statute that is
7   being -- the statute under which the conviction occurred.  And
8   the question posed to the Court is set by Section 4B1.2, does
9   that statute have an element, the use, attempted use, or
10  threatened use of physical force against the person of another?
11         Here, the violation that resulted in the conviction is
12  the violation of 18-9-116.5 of the Colorado Revised Statutes.
13  And, actually, it is subpart 2(a) of that statute, which
14  provides that vehicular eluding is a Class 5 felony, except
15  that vehicular eluding that results in bodily injury to another
16  person is a Class 4 felony, and vehicular eluding that results
17  in death to another person is a Class 3 felony.
18         Here, the conviction was vehicular eluding --
19  conspiracy to engage in vehicular eluding that results in
20  bodily injury.  By definition, if there is bodily injury, there
21  must have been the use, attempted use, or threatened use of
22  physical force in order to accomplish it.  Therefore, I find
23  that this particular conviction arising under 18-9-116.5 falls
24  within the definition of a crime of violence.  And the fact
25  that it was a conspiracy conviction does not change that

1  conclusion, because the notes following this subsection specify
2  that conspiracy is intended to fall within the definition of a
3  crime of violence.
4       This is bolstered by the Tenth Circuit decision of
5  *United States v. Martinez*, where the Tenth Circuit specifically
6  said, quote, The commission has determined that crimes of
7  violence for the purposes of the guidelines enhancement include
8  the offenses of aiding and abetting, conspiring and attempting
9  to commit such offenses.  This judgment was based on the
10 commission's review of empirical sentencing data and presumably
11 reflects an assessment that attempt crimes -- similar here to a
12 conspiracy crime -- often pose a similar risk of injury as
13 completed offenses.
14      As then Chief Judge Breyer explained, the commission,
15 which collects detailed sentencing data on virtually every
16 federal criminal case is better able than any individual court
17 to make an informed judgment about the relation between the
18 particular offense and the likelihood of accompanying violence,
19 citing to *United States v. Doe* at 960 F.2d 221, a First Circuit
20 Court of Appeals decision in 1992.
21      I therefore find that the offense level here is
22 properly calculated at 20.
23      Then there is a reduction in the offense level of
24 three levels for the defendant's acceptance of responsibility.
25 That's the maximum adjustment under the guidelines, and it is

1   because the provisions of Section 3E1.1(a) and (b) have been
2   satisfied.  This results in a Total Offense Level of 17.
3          The second component here is the criminal history
4   category.  And here, the Criminal History Category is
5   determined to be VI, based on 17 criminal history points.  The
6   defendant argues that this criminal history calculation
7   substantially overstates the seriousness of his actual criminal
8   history under Section 4A1.3 of the guidelines.  And he points
9   to the 6 points that are accumulated in -- as reflected in
10  paragraphs 37 through 46 of the presentence investigation
11  report.  All of these convictions involve domestic violence
12  convictions, based on -- growing out of his relationship with
13  Ms. Cox.  What the defendant contends is, since Ms. Cox now
14  supports him in this proceeding and has written a letter in
15  support of him, that the 6 points that are attributed to these
16  convictions should not be treated as being as serious as the
17  points would suggest.
18         I start with the observation that Section 4A1.3, that
19  is invoked here, requires a showing that the defendant's
20  criminal history category substantially overrepresents the
21  seriousness of the defendant's criminal history.  I note that
22  the criminal history category, which is what we focus on with
23  regard to this particular section under the guidelines, is VI.
24  And the Criminal History Category VI is reached by 13 criminal
25  history points.  Mr. Switzer has 17.  So, in essence, what

1   Mr. Switzer is arguing is that the convictions arising out of
2   his relationship with Ms. Cox overstate the seriousness of his
3   criminal history by at least 5 points.  In other words, that
4   there really should only be one criminal history point given to
5   all of these convictions, because that's the only way he would
6   get out of Criminal History Category VI.
7             Having reviewed the presentence report, I do not find,
8   first of all, that these convictions -- that the criminal
9   history substantially overrepresents the likelihood of violence
10  or the seriousness of the conduct.  And I cannot conclude that
11  even if it did result in an overstatement of the seriousness of
12  the criminal history, that it would take it out of Criminal
13  History Category VI, attributing only one criminal history
14  point to convictions that are reflected in paragraphs 37
15  through 46.
16            These convictions, although they arise in the course
17  of a domestic relationship, reflect serious physical injury.
18  They reflect, as is often the case, a change in heart between
19  the individuals involved after the incident is resolved.  But
20  the fact that Ms. Cox now supports the defendant does not in
21  any way, shape, or form reduce the seriousness of the conduct
22  that he engaged in that gave rise to the convictions.
23  Therefore, I find that Criminal History Category VI accurately
24  represents the defendant's criminal history; and I decline to
25  depart downward based on that argument.

1      With a Criminal History Category of VI and an offense
2 level of 17, the guidelines recommend incarceration of 51 to 63
3 months, supervised release of 1 to 3 years, a fine of $5,000 to
4 $50,000, and a special assessment of $100 is mandated.
5      The defendant requests downward departures from this
6 guideline range on several additional grounds.  First of all,
7 under Section 3B1.2, that he engaged in a mitigating role in
8 this offense.  I find that that section is not appropriate
9 because this offense was -- involved only one participant,
10 Mr. Switzer, who was in possession of a firearm.  In order for
11 Section 3B1.2 to apply, as noted in application note 2, the
12 offense must involve more than one participant, because this
13 particular mitigating role ground only applies by comparing the
14 behavior of different participants.  And where there is only
15 one participant, it simply is not applicable.
16      The next argument that is made is made in the context
17 of the defendant's family ties.  This is made both as a
18 departure and a variance argument.  And then there is an
19 argument of post-arrest rehabilitation made as a departure
20 argument and also as a variance argument.  Neither argument
21 gives rise to a departure under the guidelines.  Family ties
22 are a disfavored ground for a departure under the guidelines,
23 and that is because almost always a family is adversely
24 impacted by a defendant's incarceration, almost always.  There
25 is nothing new, there is nothing novel about the fact that

1  Mr. Switzer's family is adversely impacted.  We wish that
2  weren't the case.  I certainly wish that his wife and children
3  were not adversely impacted, but that's a consequence of his
4  behavior.
5       And as to the argument that he was divesting himself
6  of the weapon at the time that he was selling it and that that
7  should be taken into account, the Court finds that that is not
8  a basis either for a departure or for a variance.  That is an
9  argument of convenience made after the fact.  He was possessing
10 it prior to its sale and at the time of the sale, and whether
11 or not ever an arrest occurred after the sale is not important
12 here.
13       As to post-arrest rehabilitation, that's not
14 applicable, because the rehabilitation that is being discussed
15 here, two years on his job with progressing responsibility and
16 increasing responsible conduct with regard to his family,
17 didn't occur post-arrest.  It occurred pre-arrest.  It was
18 during the time period 2009 to 2012.
19       So that brings us, then, to the variance arguments.
20 The variance arguments I understand to be the following:
21       One, that he was trying to get rid of the gun, that
22 this has had an adverse effect on his family, that he has had
23 two years on his job at Navajo, he's progressing, he was
24 increasingly more responsible, he disavowed his prior conduct.
25 Summed up, he grew up.  He acquired a number of convictions

1   that put him in Criminal History Category VI, realized that
2   this was not a productive way to live, changed his behavior in
3   the last couple of years.
4           I hear that.  I hear that he doesn't want to be
5   separated from his family.  I hear that he regrets that what he
6   did has impacted his family.  If there were a long period of
7   time of behaving in a lawful fashion, this argument would be
8   more persuasive; but a couple of years isn't very long.  It
9   does reflect a change in approach, especially when you have
10  such a serious criminal history up to 2009; but it isn't a very
11  long period of time to judge the future behavior of
12  Mr. Switzer.
13          I'll give him the benefit of the doubt insofar as I
14  consider the sentencing objective of protecting the public.
15  And I do that based upon his statement that he believes that
16  there are other reasons beside complying with the law that
17  justify getting rid of a weapon and not having a weapon around
18  his children.  And I also give him credit for the
19  accomplishments that he's made over the last couple of years.
20  But that doesn't get him off the hook as far as a prison term
21  is concerned.  And that's because the sentencing objectives
22  also include, reflecting the seriousness of the offense,
23  promoting respect for the law, adequately deterring criminal
24  conduct, and providing him with needed educational or
25  vocational training, medical care, and other correctional

1   treatment in the most effective manner.

2   Sentencing is not about deciding who is a good person
3   or a bad person, and it's a very ineffective way to try to
4   judge the future behavior of anyone.  It is a time for being
5   accountable for past events, past behavior; and that's what
6   Mr. Switzer is being held accountable for.  Now, it may in his
7   mind be water far under the bridge because he's changed his
8   approach to life, but he's still accountable for it.  He still
9   was in possession of a gun, and he sold or attempted to sell
10  the gun, and his possession and his attempt to sell were
11  illegal.

12  I believe that a slight variance is appropriate in
13  deference to the interruption in criminal behavior.  I intend
14  to impose a sentence of incarceration of 40 months of
15  imprisonment, followed by 3 years of supervised release.  I
16  find that he lacks the ability to pay a fine, and, therefore,
17  do not intend to impose one.  And in addition, specifically
18  find that the payment of the fine would create hardship for
19  those that are dependent upon him.  And a special assessment of
20  $100 is mandated by statute.

21  Any need for clarification, further explanation,
22  objection, or request for a continuance?

23  *MR. TILL:*  Not from the Government, Your Honor.

24  *MR. WILLETT:*  May I have a moment, ma'am?

25  I guess to the extent that our memorandum contradicts

1  some of the Court's findings, we would maintain an objection on
2  that part.
3         We would just ask that the Court also consider making
4  a recommendation for the F.C.I. Florence.
5         *THE COURT:*  I decline that request, and I do so as a
6  matter of consideration both in this case and every other case.
7         First of all, notwithstanding the fact that
8  Mr. Willett has told the defendant that it doesn't matter
9  whether I give a recommendation or not, that doesn't influence
10 the Bureau of Prisons.  I want -- I do not wish to create any
11 expectation that it does.  My experience in making
12 recommendations is that the Government -- that the Bureau of
13 Prisons follows them less than half the time.  And therefore,
14 they are essentially meaningless.
15        Secondly, what the Bureau of Prisons takes into
16 account in making an assignment includes the proximity to
17 family, it includes the security concerns and bed space.  As to
18 the second and third considerations, I have no information and
19 cannot assess that.  And finally, part of the sentencing
20 objective here is to provide the defendant with needed
21 educational or vocational training, medical care, or other
22 correctional treatment in the most effective manner.
23        Mr. Switzer, there are a variety of different programs
24 available at different institutions; and I strongly recommend
25 that you focus on the program that is going to provide you with

1   the best skill set when you get out of prison.  Whether you go
2   back to Navajo or you go to some other location to work, you
3   need to come out a better person than you went in.  And
4   selecting or choosing or making -- requesting a recommendation
5   for a location close to your family may be emotionally
6   satisfying at this point; but in the long run, it's not going
7   to help you.  What will help you is having a better skill set.
8             So I strongly recommend that when you meet with the
9   Bureau of Prisons, you arm yourself with information about
10  those facilities that are hopefully close enough for your
11  family to visit and also have the kinds of programs that will
12  aid you once you get out of prison.  That's part of this new
13  responsibility that you're espousing.
14            Any need for further clarification or explanation?
15            *MR. WILLETT:*  No, ma'am.
16            *THE COURT:*  All right.  For the Government?
17            *MR. TILL:*  No, Your Honor.  Thank you.
18            *THE COURT:*  Then having considered both the sentencing
19  objectives and the sentencing factors, and previously having
20  determined the sentence which is sufficient but not no greater
21  than necessary to satisfy those sentencing objectives, pursuant
22  to the Sentencing Reform Act of 1984, it is the judgment of the
23  Court that the defendant, James R.  Switzer, be committed to
24  the custody of the Bureau of Prisons to be imprisoned for a
25  term of 40 months.

1         Upon release from imprisonment, he'll be placed on
2    supervised release for a term of 3 years.  Within 72 hours of
3    release from the custody of the Bureau of Prisons, he will
4    report in person to the probation office in the district to
5    which he is released.  While on supervised release, he will not
6    commit another federal, state, or local crime; he'll not
7    possess a firearm as defined in 18 U.S.C. Section 921; and
8    he'll comply with the standard conditions that have been
9    adopted by the Court.  He'll not unlawfully possess a
10   controlled substance, he'll refrain from any unlawful use of a
11   controlled substance, and he will submit to one drug test
12   within 15 days of release on supervised release and at least
13   two periodic tests thereafter.  He'll cooperate in the
14   collection of DNA as directed by the probation officer.
15        And I find that there are special conditions of
16   supervision that are reasonably related to the factors
17   enumerated in 18 U.S.C. Section 3553(a) and 18 U.S.C. Section
18   3583(d).
19        The special condition that is appropriate in this
20   circumstance is that the defendant participate in and
21   successfully complete a program of testing and/or treatment for
22   substance abuse as approved by the probation officer until such
23   time as he is released from the program by the probation
24   officer.  He'll abstain from the use of alcohol or other
25   intoxicants during the course of treatment.  And to the extent

1  he is able to and directed to by the probation officer, he'll
2  pay for the cost of treatment.
3         No fine is imposed for the reasons specified.  The
4  statute mandates the imposition, however, of a special
5  assessment of $100, which is due immediately.
6         Mr. Switzer, I advise you of your right to appeal this
7  sentence.  In order to appeal, you must file a Notice of Appeal
8  within 14 days after entry of judgment.  If you do not file a
9  Notice of Appeal within that time period, you lose your right
10 to appeal.  Now, ordinarily, Mr. Willett would file that Notice
11 of Appeal for you.  But if he's unable to do so or unwilling to
12 do so, if you request, I'll direct the Clerk of the Court to
13 file the Notice of Appeal for you.
14        Is there any further business to bring before the
15 Court?
16        *MR. TILL:*  No, Your Honor.  Thank you.
17        *MR. WILLETT:*  No, ma'am.
18        *THE COURT:*  Thank you, Mr. Till; thank you,
19 Mr. Willett; thank you to our probation officer, marshal staff,
20 and court staff.  Mr. Switzer will be remanded to the custody
21 of the United States Marshal.  We'll stand in recess.
22        (Recess at 10:28 a.m.)
23
24
25

```
 1                     REPORTER'S CERTIFICATE

 2

 3        I certify that the foregoing is a correct transcript from
     the record of proceedings in the above-entitled matter.
 4

 5        Dated at Denver, Colorado, this 31st day of October,

 6   2012.

 7                                  s/Therese Lindblom

 8                             _____
                                    Therese Lindblom,CSR,RMR,CRR
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```