IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 12-cr-00010-MSK

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

JAMES R. SWITZER,

    Defendant.
_____

**REPORTER'S TRANSCRIPT**
(Sentencing Hearing)
_____

    Proceedings before the HONORABLE MARCIA S. KRIEGER, Judge, United States District Court for the District of Colorado, commencing at 9:13 a.m., on the 30th day of October, 2012, in Courtroom 901A, United States Courthouse, Denver, Colorado.

**APPEARANCES**

    GUY TILL, Assistant U.S. Attorney, 1225 17th Street, Suite 700, Denver, Colorado, 80202, appearing for the plaintiff.

    JONATHAN WILLETT, Attorney at Law, 1331 17th Street, Suite 608, Denver, Colorado, 80202, appearing for the defendant.

THERESE LINDBLOM, Official Reporter
901 19th Street, Denver, Colorado 80294
Proceedings Reported by Mechanical Stenography
Transcription Produced via Computer

<pre>
 1                        P R O C E E D I N G S

 2              THE COURT:  Court is convened this morning in Case No.

 3     12-cr-10, encaptioned the United States of America v. James R.

 4     Switzer.  The matter is set down for sentencing.

 5              Could I have entries of appearance, please.

 6              MR. TILL:  Good morning, Your Honor.  Your Honor, I'm

 7     Guy Till.  I'm an assistant U.S. attorney representing the

 8     Government this morning, Your Honor.

 9              THE COURT:  Good morning and welcome.

10              MR. WILLETT:  Good morning, Judge.  Jonathan Willett.

11     I'm CJA counsel, and I'm here with Mr. Switzer, who appears to

12     my left.

13              THE COURT:  Good morning and welcome.  I assume that's

14     Mr. Switzer at your left.

15              MR. WILLETT:  Yes, sir.

16              THE COURT:  Thank you.

17              All right.  Are you ready to proceed?

18              MR. TILL:  Yes, Your Honor.

19              MR. WILLETT:  Yes, Your Honor.

20              THE COURT:  Okay.  Then, Mr. Willett, would you and

21     Mr. Switzer please approach the lectern.

22              This matter is before the Court for purposes of

23     sentencing.  The record reflects that the defendant was charged

24     in a 32-count Indictment filed with this court on January 9,

25     2012.  He was charged in Count 28 as being a prohibited person
</pre>

1    in possession of a firearm in violation of 18 U.S.C. Sections

2    922(g)(1), 924(a)(2) and 2, and in Count 32 with using and

3    maintaining a drug-involved premises and aiding and abetting in

4    violation of 21 U.S.C. Section 856(a)(1) and (2) and (b) and 18

5    U.S.C. Section 2.  He was charged on February 6, 2012, in the

6    Superseding Indictment found at Docket No. 180.  He was charged

7    with the same two offenses in Counts 28 and 32.  And on May 24,

8    2012, he pled guilty to Count 28 of the Indictment pursuant to

9    a plea agreement.  In accordance with the plea agreement, the

10   Government agreed to dismiss the remaining counts.

11        I accepted the plea and his -- and he was adjudged

12   guilty of Count 28 of the Indictment.  The Government orally

13   moved to dismiss the remaining count of the Indictment and the

14   counts in the Superseding Indictment.  I granted that motion

15   but stayed the effect of the order until the time of

16   sentencing.

17        In preparation for this hearing, I've had the

18   opportunity to review and consider a number of documents:  The

19   initial presentence report found at Docket No. 596, a response

20   to that by the defendant at 614, another response by the

21   defendant at 674, the final presentence report at 688, an

22   addendum to that report at 689, an addendum at 692, and the

23   defendant's motion for a departure and motion for non-guideline

24   sentence filed at 697.

25        Let me inquire, counsel, whether you've had adequate

1   opportunity, as has the defendant, to review and consider these

2   documents.

3        *MR. WILLETT:*  We have, ma'am.  The only one that the

4   Court didn't mention was the sentencing statement, and I'm not

5   sure of the document number.  It was parenthetically titled

6   Letters On Behalf of the Defendant.

7        *THE COURT:*  Actually, that was filed at the time of

8   our last sentencing, and there was a response to the motion

9   filed subsequently thereto.  And I reviewed both of those,

10  thank you.

11       *MR. WILLETT:*  Thank you, ma'am.

12       *THE COURT:*  Mr. Till.

13       *MR. TILL:*  Yes, Your Honor, I've reviewed everything

14  also.

15       *THE COURT:*  Okay.  Is there any dispute as to the

16  facts in the presentence investigation report?

17       *MR. TILL:*  Not from the Government, Your Honor.

18       *MR. WILLETT:*  No, ma'am.

19       *THE COURT:*  Any objection as to the calculations under

20  the sentencing guidelines in the presentence report?

21       *MR. TILL:*  Not from the Government, Your Honor.

22       *MR. WILLETT:*  We object to certain calculations in our

23  motion for a downward departure.  And primarily they're --

24  Judge, we're objecting to the calculation of the offense level

25  under 2K2.1.

1          *THE COURT:*  Would you make your argument, please.

2          *MR. WILLETT:*  Okay.  Well, Judge, as the Court's

3     aware, the Probation Department has submitted its report,

4     indicating that the Base Offense Level without adjustment in

5     this matter should be at 20.  And that calculation is based

6     upon consideration of Mr. Switzer's prior Broomfield state --

7     Broomfield County, state of Colorado case involving a

8     conviction for conspiracy to elude with injury.  The defendant

9     contends that the adjusted offense level there should be a 12.

10          The parameters of the argument, according to

11     probation, are that this prior offense is a crime of violence

12     for purposes of the guidelines.  The defendant contends it's

13     not.  The defendant concedes that there is binding case law

14     saying that vehicular eluding is a crime of violence.

15          *THE COURT:*  Under Colorado statute or other statute?

16          *MR. WILLETT:*  I think it's a U.S. Supreme Court case,

17     Judge.  And so -- and I'm just talking about the federal

18     classifications for purposes of the guidelines.

19          There is a Tenth Circuit case called ***United States v.***

20     ***Thomas***, which appears -- this is the countervailing authority

21     that would be relied upon by the Probation Department.  ***United***

22     ***States v. Thomas*** is at 643 F.3d 802.  The Tenth Circuit found

23     that vehicular eluding is a crime of violence.

24          *THE COURT:*  That was applying the Kansas statute.

25          *MR. WILLETT:*  Okay.  And then there was also a United

 1    States Supreme Court case of **Sykes v. United States**.

 2         *THE COURT:*  And what statute was being applied there?

 3         *MR. WILLETT:*  Let me find that case.  I'm sure it

 4    wasn't our Colorado statute, that's for sure.

 5         Give me one moment, ma'am.

 6         I'm not sure I have a copy of cites here, but I know

 7    it wasn't Colorado statute.

 8         But to articulate the defendant's argument, Judge,

 9    what we think is the pivot point is that Mr. Switzer was

10    convicted of a conspiracy to elude, and not eluding itself.

11    And I think if the Court were to apply the categorical approach

12    to this offense, the essence of the crime there is conspiracy,

13    and conspiracy requires an agreement.  It doesn't actually

14    require categorically the conduct that would cause a potential

15    for injury.  What it would include is something called an -- a

16    corroborative act or some act corroborative of the purpose.

17    And we're suggesting to the Court that categorically, that

18    prior offense would not constitute a crime of violence.

19         And there is some authority and some analysis that

20    comes from Tenth Circuit case law that appears to support that

21    conclusion.  The cases we would rely on for that are **United**

22    **States v. Fell**, which appears at 511 F.3d 1035; **United States**

23    **v. Martinez**, which appears at 602 F.3d 1166; and then

24    primarily, also the case of **United States v. Whitson** at 597

25    F.3d 1218.  And in **Whitson,** they really talk about why a

1    conspiracy is distinguishable for making the categorical --

2    using the categorical approach to determine whether an offense

3    of conspiracy is a crime of violence.

4           So in terms of some laundry cleaning, or some cleaning

5    up measures, Mr. Switzer has no prior drug-related offenses, so

6    that would not be involved.  And so what we're, essentially,

7    suggesting is, just looking at the nature of the conviction

8    itself as a conspiracy offense, it doesn't categorically fall

9    into a crime of violence under 2K2.1 such that the offense

10   level should be a 20.  We believe the Court should start at a

11   14, and subject to its approval, give him two levels off for

12   acceptance of responsibility, making that 12.

13          I could go into other points of the argument whenever

14   the Court is --

15          THE COURT:  This is about the calculation under the

16   guidelines.

17          MR. WILLETT:  Okay.

18          THE COURT:  Are there other arguments you want to make

19   about the calculation under the guidelines --

20          MR. WILLETT:  Well --

21          THE COURT:  -- as stated in the report.  This is not

22   about departures; this is not about variances.

23          MR. WILLETT:  I understand.  That's the only one

24   relating to calculation.

25          THE COURT:  All right.  Response by the Government.

1          MR. TILL:  Your Honor, the Government's position is

2     that the classification by the Probation Department is correct.

3     And I do have one citation that I'd like to add, although it's

4     in -- it's not actually -- it's a Federal Appendix case, Your

5     Honor.  It's **United States v. Adkins**, so it's of limited

6     significance for the Court.  It's not to be cited by us, then,

7     but it's a May 24, 2010 case by Judge Lucero.  And it does

8     construe the Colorado statute and does find that attempted

9     vehicular eluding is a crime of violence for guidelines

10    purposes.  379 F.Appx. 762.  Westlaw number is 2073594.

11         MR. WILLETT:  I have a small response to that, if the

12    Court may permit that.  Thank you.

13         The response -- our response to that, just in terms of

14    using the categorical approach, is that attempt requires a

15    substantial step toward the conduct.  And that, to me, seems

16    more than mere preparation, than having an agreement and taking

17    an act that is corroborative of the purpose.  I think taking a

18    substantial step by its own terms is much more conduct that a

19    lot -- bears a lot more potential for risk.

20         THE COURT:  Thank you.  Requests for departures.

21         MR. WILLETT:  Thank you, ma'am.  We are -- we do have

22    several bases for the request for departure.

23         The first one is under United States Sentencing

24    Guidelines Section 3B1.2.  We are suggesting that Mr. Switzer

25    has a mitigated role in this offense.

1      THE COURT:  What is this offense?

2      MR. WILLETT:  This offense is possession of a weapon.

3      THE COURT:  How can he have a mitigating role in

4  possession of a weapon?

5      MR. WILLETT:  Well --

6      THE COURT:  He either possessed it or he didn't

7  possess it.

8      MR. WILLETT:  I generally don't see things as so black

9  and white.  But obviously, the Court is free to.

10      THE COURT:  Well, tell me how you can have a

11  mitigating role in possession of a weapon.

12      MR. WILLETT:  Well, we have two ways of looking at

13  this, Judge.  The first way is to say, if you look at the

14  overall conduct that was charged in the case --

15      THE COURT:  We're not looking at the overall conduct

16  charged in the case.  We're looking at the facts in the plea

17  agreement.  Those are the facts that you have stipulated to,

18  and I limit myself to that.

19      MR. WILLETT:  Okay.  Then I will go on to the second

20  part, ma'am.

21      THE COURT:  Okay.

22      MR. WILLETT:  The second part is that he did possess

23  the weapon, but he was getting rid of the weapon because his

24  wife told him he needed to.  And so he was essentially in that

25  weird position where, say, a parent -- not a parent, someone

1    finds drugs in the house and has to flush them.  They're

2    holding them; they have them; they're trying to get rid of

3    them.  He didn't know exactly how to get rid of it.  Didn't

4    really want to throw it out in the trash, for fear someone

5    might pick it up.  He was afraid to bring it to the police

6    station because then he was afraid of getting arrested.  He

7    probably -- there was a way that we had discussed for him to do

8    it, where probably wouldn't have involved any criminal charge.

9    He did do the thing which I think does look a little bit bad,

10   which is selling it to a confederate.  But it was at -- at the

11   time a non-functioning pistol.  We readily admit it could

12   readily be made functional.  But he was essentially getting rid

13   of the item when the offense conduct occurred.

14        THE COURT:  So how does that fit into a mitigating

15   Section under Section 3B1.2 of the guidelines?

16        MR. WILLETT:  Well, we're suggesting there, Judge,

17   that the act of getting rid of the gun is less than having the

18   gun and carrying it with you and getting arrested, say, in a

19   pat-down while you have the gun with you.

20        THE COURT:  What does the sentencing guideline section

21   say?

22        MR. WILLETT:  Well, the sentencing guideline section

23   says, normally, if someone has pled guilty to an offense which

24   is smaller than what he was charged with, then this section

25   doesn't usually apply.

1          THE COURT:  Is there any other argument you'd like to

2    make with regard to this departure?

3          MR. WILLETT:  Well, I think there might be, if the

4    Court would give me one minute.

5          If I could have one more minute, Judge.

6          I guess the only other argument we would make -- and I

7    haven't really backed this up as well as I could have using

8    facts of other people involved in the case -- is that his

9    possession of the weapon made him somewhat -- substantially

10   less culpable than other participants in the case who had guns.

11   And so we're suggesting to the Court that, as the Court knows

12   about this case and this investigation much better than I do,

13   probably the defendant does, but it does appear as if many

14   other persons who pled guilty to possession of a weapon here

15   had other offenses on going at the time, were seen in

16   possession of weapons a lot more often than Mr. Switzer.  So

17   relative to the other participants, his conduct seems more

18   minimal.  That's all.

19         THE COURT:  Thank you.  Response.

20         MR. TILL:  Your Honor, the Government does not agree

21   with Mr. Willett's argument at all.  I believe that the

22   Probation Department is correct, Your Honor.

23         THE COURT:  What's your argument in response?

24         MR. TILL:  Well, Your Honor, the argument is that he

25   has pled to a discrete offense.  The offense is described in

1    the guidelines.  He is within the four corners of the plea

2    agreement.  It's just not the case he's a minor participant as

3    that is defined.  He's trying to proceed by an offer of proof,

4    and -- but the offer of proof essentially is not relevant.  And

5    also I submit that the offer of proof is not very accurate,

6    from my understanding.

7              THE COURT:  Do you have evidence to the contrary?

8              MR. TILL:  I don't have a fact witness at this time

9    today.

10             THE COURT:  All right.  Thank you.

11             Is there any request -- any other request for a

12   departure that we haven't addressed?

13             MR. WILLETT:  Yes, ma'am.

14             THE COURT:  All right.

15             MR. WILLETT:  We do contend under United States

16   sentencing guideline Section 4A1.3(b) that Mr. Switzer's

17   criminal history is overstated.  The basis for that comes from

18   paragraphs, pretty much 37 to 46, with the exception of 42 and

19   41, in which Mr. Switzer is assessed with six criminal history

20   points for convictions he sustained as a result of his

21   relationship with Jennifer Cox.  Jennifer Cox is a woman who

22   wrote this court a letter, very favorably -- speaking very

23   favorably of Mr. Switzer.

24             And while Mr. Switzer doesn't deny his extremely poor

25   behavior during his relationship with Ms. Cox, these multiple

1    convictions all occurred in a pretty short period of time.  For

2    all of them, it appeared as if he was not represented by

3    counsel.  And one of these situations -- each of them was one

4    of these situations where, essentially, you come to court on a

5    domestic violence case in state court, those cases are fast

6    tracked, the court asks you how you would plead, and,

7    essentially, a lot of times people plead guilty with the hope

8    they're going to get out of jail that day.

9         I don't want to suggest that Mr. Switzer in any way

10   personally minimizes his conduct with Ms. Cox, but just

11   indicate that his poor decisions were all made essentially in

12   an effort to see his child, who the court also -- whom the

13   Court also has a letter from.

14        I realize that there is some case law indicating that

15   uncounseled, prior convictions may still be used to bump up

16   one's criminal history.  But the frequency, close in time, the

17   repeated nature of these convictions for a total of 6 points

18   seems to be significant.  And we're suggesting that Ms. Cox

19   appears to understand that.  He was unrepresented, and with

20   some relief accorded him on the overstatement of these

21   convictions, he may fall into a level V Criminal History

22   Category.

23        We realize that is up to the Court to decide.  It's

24   something I felt needed to be presented.

25        THE COURT:  Thank you, response.

 1            MR. TILL:  Your Honor, the Government believes that

 2   the guideline provisions are correct and fair to the defendant

 3   in this case.  And the offenses -- the domestic violence type

 4   of cases and the situations that are described in the

 5   presentence report, where there is -- I don't know how to

 6   characterize it, but an incident that involves a woman and

 7   sometimes children, these are very serious offenses.  And the

 8   Government does not believe they should be discounted.

 9            THE COURT:  Thank you.

10            Any further requests for departure?

11            MR. WILLETT:  One moment.

12            There are two more areas, Judge.  I could put them all

13   together.

14            Essentially, the third area is family ties and

15   responsibilities.  In making this request for a departure,

16   Mr. Switzer is cognizant that the guidelines do disfavor the

17   consideration of family ties and responsibilities.  However,

18   there is a case, **United States v. Munoz-Nava,** it's a Tenth

19   Circuit case, 524 F.3d 1137, 2008, which indicated that the

20   Court is still free to make these types of determinations.

21            We are --

22            THE COURT:  What do the sentencing guidelines require,

23   counsel?

24            MR. WILLETT:  The sentencing guidelines disfavor --

25   require the Court to resolve it, but they do disfavor a

1   resolution or any kind of downward departure based upon family

2   ties.

3           THE COURT:  And why should this court depart from

4   the -- what the guidelines say, which is disfavoring any family

5   ties as a basis for departure?

6           MR. WILLETT:  Well, we're suggesting to the Court that

7   this case is -- presents a somewhat exceptional situation

8   because of what has happened to the family since Mr. Switzer's

9   incarceration.

10          THE COURT:  Are you making a variance argument or a

11  departure argument?

12          MR. WILLETT:  I suppose this is more of a variance

13  argument.

14          THE COURT:  Okay.  And how about the other argument

15  that you wanted to make with regard to departure?  Is it really

16  a variance argument too?

17          MR. WILLETT:  Yes.

18          THE COURT:  Okay.  Why don't we look at these

19  arguments, then, in the context of a variance.

20          MR. WILLETT:  Okay.  Thank you, ma'am.  I appreciate

21  the Court's helping out there.

22              In terms of a variance, we're suggesting, Judge, that

23  when Mr. -- Mr. Switzer was arrested for this -- this offense

24  occurred in 2009, over three years ago.  Mr. Switzer had been

25  in a bad place most of his adult life, essentially, and he'll

1    be the first to admit he had a -- compiled a pretty significant

2    criminal history.

3         What occurred, though, in 2009 is that he was -- got

4    some kind of realization, and he started to live his life the

5    way -- a way -- in a way that didn't adversely affect his

6    family.  He started to disavow his prior conduct, he started to

7    become a responsible provider, and he was working and very --

8    very hard and got a decent job as a manager and a dispatcher

9    for Navajo Express, which is a van line company out of Denver,

10   here.  And, essentially, he was able to make a good home, a

11   decent home for his wife and his three children.

12        What's happened since that time, Judge, is, everything

13   was going real well until he was arrested here in January of

14   2012 for an event that happened some three years earlier.  And

15   with his wife, who is in the courtroom, not working, the family

16   suffered some extreme and dramatic hardship.  They had to move

17   into the basement of one of the parent's homes.  The kids

18   started acting up.  And prior to his incarceration, Mr. Switzer

19   and his wife had -- essentially, there was a baby in the oven.

20   And so now since he's been incarcerated, a little baby has been

21   born.  We've got four children.  The older ones are starting to

22   act up and are sort of becoming at risk.  And this has really

23   affected Mr. Switzer's family, his wife, in dramatic ways,

24   because she doesn't have the ability to care for all of them

25   financially and emotionally.  And the family has really --

1    well, it hasn't spun out of control, it's on the verge of

2    getting there.

3            And I think if -- with Mr. Switzer's sort of new-found

4    responsibility and approach to his family, economically and

5    emotionally, this factor might be something the Court should

6    consider in terms of deciding whether to vary from the

7    guideline -- from the guideline -- his guideline sentence.

8            The other area which I'll just blend into here,

9    because I think it's very related, is his post-arrest

10   rehabilitation.  And this -- I think this comes before the

11   Court in somewhat of an unusual posture.  Normally, I think how

12   the Court sees this is someone is incarcerated for an offense,

13   and you can see that they're sort of making amends after their

14   incarceration, you know, while they're incarcerated for the

15   subject crime.  Here, we had a kind of strange circumstance,

16   where Mr. Switzer committed the subject offense, didn't really

17   know that he was eventually going to pay the piper on this one,

18   and turned his life around.

19           And in turning his life around, he performed a bunch

20   of therapeutic programs involving anger management, financial

21   management, conflict management, other life stills management.

22   He -- like I indicated before, he was able to work steadily and

23   efficiently and in a way that was recognized well with Navajo.

24   And so, essentially, without really being in a situation where

25   there is a sentence or a punishment hanging over your head if

1    you don't perform, he did perform.  And we would suggest to the

2    Court that that is some of the best kind of rehabilitation,

3    because you're finding it on your own without a whole lot of

4    external influence.

5        So -- and we recognize that -- he recognizes that,

6    essentially, this is the way most people lead their lives.  But

7    for him, I think this made it somewhat exceptional with his

8    criminal history being so high, being a VI, as calculated by

9    probation, this was a big step for him.  He maintained that

10   level of commitment for several years until he was arrested in

11   the instant case.  He's had no writeups or issues in the jail

12   where he's been incarcerated.  And in terms of our

13   conversations, he really has -- he's talking a good talk, in

14   addition to having walked a good walk while he's been

15   incarcerated about what he'll do when he gets out to continue

16   his rehabilitation.

17       THE COURT:  What sentence do you believe is

18   appropriate here, Mr. Willett?

19       MR. WILLETT:  Well, Judge, we would suggest a

20   guideline -- a sentence that approximates the guideline for a

21   person with a Criminal History Category of V and an Adjusted

22   Offense Level of -- an offense level of 12.  And that would be

23   the adjusted offense level from 14.  And a sentence within that

24   guideline range, we think, would approximate the considerations

25   we've raised about a variance and a departure.  And we think it

1   would also approximate, essentially, consideration of the

2   statutory factors as well, because it would reflect the

3   seriousness of the offense.

4         We are not trying in any way to minimize the

5   possession of a weapon, but on the scale of offenses, say,

6   possessing a non-functioning weapon or a weapon that wasn't

7   functioning at the time.  And then going to the second

8   consideration of deterrence, Mr. Switzer has a track record in

9   the past few years of showing that he has gotten the message

10   and that his future does seem a heck of a lot brighter than it

11   did, say, three or four years ago.

12         And I think that merges into the third consideration

13   of protecting the public.  He has acted like a responsible

14   citizen in the last three years.  Obviously, before that, I

15   can't minimize or mitigate how he behaved before that time.

16         And then, lastly, Judge, I think he is on a course to

17   rehabilitate.  And a lot of that I think is vocational for him.

18   The defense's sense of a lot of these -- a lot of crime is that

19   it is a reflection of the amount of opportunity a person

20   believes they have or has.  And I think Mr. Switzer, as the

21   Court can tell from the Navajo letter, has opportunity back

22   with them, and they're willing to take him back.  And then if

23   he's there, and he continues to perform, he can move up the

24   ladder in that company well.  And I think the -- his prospects

25   and his risk to the public are -- his prospects are enhanced

1   and his risk to the public are minimized by the fact that he's

2   got this great job waiting for him that he's already proven

3   himself in.

4          So we do think that that suggestion about the -- where

5   he might fall in the guidelines as it also is -- it's buoyed by

6   the sentencing factors, we think a sentence in that range would

7   be appropriate.

8          THE COURT:  Thank you.

9          I understand that you're asking for a sentence of

10  incarceration of between 27 and 33 months.  What's the

11  Government's response?

12         MR. TILL:  Your Honor, the Government's response is

13  that the defendant should be sentenced according to the

14  calculations in the presentence report.  And if they go lower

15  than that, we'd minimize the seriousness of the offense, and it

16  would also present a risk to the public.  The defendant is

17  apparently a 29-year-old man who has Criminal History Category

18  of VI, according to the presentence report, according to the

19  incidents and events that are in the documented report.  The

20  Government believes it's warranted.

21         And we compliment him on doing well, apparently, for

22  the last couple of years; but there is a long record of

23  presenting a risk to the public.  And we ask the Court to

24  impose a sentence according to the guideline calculations.

25         THE COURT:  Thank you.

1          Mr. Switzer, is there anything you'd like to say?

2          *THE DEFENDANT:*  Good morning, Your Honor.  Your Honor,

3   I just want to let the courts know that I do accept

4   responsibility for my actions.  And I do know that I don't have

5   any excuses for them, nor do I want to justify my actions

6   whatsoever to you.  I have learned over the last nine months of

7   being incarcerated, after speaking with my lawyer on several

8   occasions, that he's explained to me the risks of having a

9   firearm.  And they are -- just having it around in the house,

10  regardless of whether I'm legally able to have it or not.  And,

11  of course, in my situation, not.  But just having it around

12  gives great potential for something bad to happen.  Regardless

13  of if I want it to happen or not, it gives potential for

14  something bad to happen if it's around.  That's the last thing

15  I want to happen, is something bad to happen to my family and

16  to myself.

17          Your Honor, I wish I would have thought about this

18  beforehand and I had that state of thinking and that way of

19  thinking before this infraction occurred with me, and I

20  probably wouldn't be standing here in front of you today.

21          Third, Your Honor, I just want to apologize to you and

22  to the courts and to the DA for my actions.  And most of all,

23  Your Honor, I'd like to apologize to my family once again for

24  putting them through this hardship, the pain that I see on my

25  children's face every day when they come to see me in the jail.

22

 1    I know it breaks my heart that I can't be with them.

 2         I want to let you know, Your Honor, I will never

 3    possess a firearm ever again or anything that's illegal, that

 4    will cause me to break the law.  And I want to tell you this, I

 5    tell you this from my heart to yours.  And I don't ever want to

 6    do anything that will separate me from my family again and put

 7    them in this position that they're in right now.

 8         Your Honor, I just ask you, Your Honor, please don't

 9    put me in prison.  Let me show you the person that I am, that I

10    have been for the last two years, and let me prove to you the

11    person that I can be for the rest of my life.

12         I just thank you for hearing me on this matter today.

13         THE COURT:  Thank you.

14         Is there any further argument to be presented?

15         MR. TILL:  Not from the Government, Your Honor.

16         MR. WILLETT:  There are a couple of other matters,

17    Judge, that we have to address.

18         Obviously, Mr. Switzer, according to probation's

19    assessment, doesn't have a whole lot of assets for purposes of

20    paying fines.  And he also, to the extent that he is he looking

21    at a little more -- is looking at more incarceration time, we'd

22    like to have the Court recommend to the Bureau of Prisons --

23    and I've explained to him that this doesn't bind the Bureau of

24    Prisons at all -- for the Florence -- the federal correctional

25    facility in Florence, Colorado.

1                And I think that that's it.

2           THE COURT:  Thank you.  I'll announce the sentence I

3     intend to impose.  Of course, counsel, you'll have an

4     opportunity to make legal objections before judgment is

5     actually entered.  If you believe that the sentence and my

6     reasoning is premised upon error or if I raise an issue that

7     you did not have adequate opportunity to consider and address,

8     I invite you to request a continuance.

9                Imposition of a sentence in a federal criminal case is

10    governed by a number of statutes.  The umbrella statute is 18

11    U.S.C. Section 3553.  In imposing sentence in this case, and in

12    other cases -- in fact, all cases -- the Court is required to

13    consider the objectives and the factors set forth in this

14    statute.  The statute requires that the sentence be sufficient

15    but not greater than necessary in order to satisfy these

16    objectives; the sentence must reflect the seriousness of the

17    offense; promote respect for the law; provide just punishment;

18    adequately deter criminal conduct; protect the public from

19    further crimes by the defendant; provide the defendant with

20    needed educational or vocational training, medical care, or

21    other correctional treatment in the most effective manner.

22               It requires me in fashioning a sentence to consider

23    particular factors:  The nature and circumstances of the

24    offense; the history and characteristics of the defendant; the

25    kinds of sentences that are available; the sentence prescribed

1      by the federal sentencing guidelines; the need to avoid

2      unwarranted sentence disparities among defendants with similar

3      records found guilty of similar conduct; and in the appropriate

4      case, the need for restitution.

5            At the beginning of this hearing, I identified the

6      documents that I had studied prior to the hearing, confirmed

7      with counsel that they and the defendant had had an opportunity

8      to review those documents, asked if there were any additional

9      documents.  Two additional documents were identified, and I

10     acknowledge that I had studied those as well.  I asked whether

11     there was any dispute as to the calculation of the sentence

12     under the federal sentencing guidelines, and there was one.

13     There are a number of requests for departure and a number of

14     requests for variance.

15           We begin with the calculation under the guidelines.

16     Mr. Switzer is convicted of violating 18 U.S.C. Section

17     922(g)(1) and 924(a)(2) and 2, by being a prohibited person in

18     possession of a firearm.

19           With regard to the calculations under the guidelines,

20     the parties have agreed that there is no factual dispute with

21     the contents of the presentence report.  Therefore, I treat the

22     facts in the report as true.

23           The Base Offense Level for violation of 18 U.S.C.

24     Section 922(g)(1) is set by Section 2K2.1 of the guidelines.

25     Here it is set at level 20, based on the defendant's prior

1    felony conviction of a crime of violence, vehicular eluding

2    resulting in injury.  This is a conviction out of the

3    Broomfield County Court, Case No. 2006-cr-4.  The first

4    argument that is made by the defendant is that vehicular

5    eluding should not be regarded as a crime of violence.  And the

6    conviction here, the defense argues, is based on a conspiracy

7    to engage in vehicular eluding; and, therefore, there needs to

8    be proof of an act in support of the conspiracy conviction.

9    And, therefore, in the absence of an automatic element of a

10   crime of violence in the statutory provision, it cannot be a

11   crime of violence.

12          The defense argument is not well placed.  **United**

13   **States v. Martinez**, a Tenth Circuit decision found at 602 F.3d

14   1166, a 2010 decision, distinguishes between the violent felony

15   determination under the armed criminal act, ACCA, and the

16   violent crime definition under the sentencing guidelines.  And

17   although I believe the defendant is correct in arguing with

18   regard to conspiracy in applying ACCA, as the Tenth Circuit

19   notes, that definition does not apply under the sentencing

20   guidelines.  Quite to the contrary, the sentencing guidelines

21   provide that the term "crime of violence" in Section 4B1.2

22   includes the offenses of aiding and abetting, conspiring and

23   attempting to commit such offenses that is found in the note

24   following the section.  And the Tenth Circuit notes that -- in

25   *Martinez*, that the Court is required not to follow the

1    definition of the ACCA for a violent felony, but, instead, a

2    crime of violence under Section 4B1.2.

3         The defense is quite correct that the Court engages in

4    a categorical definition and turns to the statute that is

5    being -- the statute under which the conviction occurred.  And

6    the question posed to the Court is set by Section 4B1.2, does

7    that statute have an element, the use, attempted use, or

8    threatened use of physical force against the person of another?

9         Here, the violation that resulted in the conviction is

10   the violation of 18-9-116.5 of the Colorado Revised Statutes.

11   And, actually, it is subpart 2(a) of that statute, which

12   provides that vehicular eluding is a Class 5 felony, except

13   that vehicular eluding that results in bodily injury to another

14   person is a Class 4 felony, and vehicular eluding that results

15   in death to another person is a Class 3 felony.

16        Here, the conviction was vehicular eluding --

17   conspiracy to engage in vehicular eluding that results in

18   bodily injury.  By definition, if there is bodily injury, there

19   must have been the use, attempted use, or threatened use of

20   physical force in order to accomplish it.  Therefore, I find

21   that this particular conviction arising under 18-9-116.5 falls

22   within the definition of a crime of violence.  And the fact

23   that it was a conspiracy conviction does not change that

24   conclusion, because the notes following this subsection specify

25   that conspiracy is intended to fall within the definition of a

1  crime of violence.

2          This is bolstered by the Tenth Circuit decision of

3  **United States v. Martinez**, where the Tenth Circuit specifically

4  said, quote, The commission has determined that crimes of

5  violence for the purposes of the guidelines enhancement include

6  the offenses of aiding and abetting, conspiring and attempting

7  to commit such offenses.  This judgment was based on the

8  commission's review of empirical sentencing data and presumably

9  reflects an assessment that attempt crimes -- similar here to a

10  conspiracy crime -- often pose a similar risk of injury as

11  completed offenses.

12          As then Chief Judge Breyer explained, the commission,

13  which collects detailed sentencing data on virtually every

14  federal criminal case is better able than any individual court

15  to make an informed judgment about the relation between the

16  particular offense and the likelihood of accompanying violence,

17  citing to **United States v. Doe** at 960 F.2d 221, a First Circuit

18  Court of Appeals decision in 1992.

19          I therefore find that the offense level here is

20  properly calculated at 20.

21          Then there is a reduction in the offense level of

22  three levels for the defendant's acceptance of responsibility.

23  That's the maximum adjustment under the guidelines, and it is

24  because the provisions of Section 3E1.1(a) and (b) have been

25  satisfied.  This results in a Total Offense Level of 17.

1              The second component here is the criminal history

2    category.  And here, the Criminal History Category is

3    determined to be VI, based on 17 criminal history points.  The

4    defendant argues that this criminal history calculation

5    substantially overstates the seriousness of his actual criminal

6    history under Section 4A1.3 of the guidelines.  And he points

7    to the 6 points that are accumulated in -- as reflected in

8    paragraphs 37 through 46 of the presentence investigation

9    report.  All of these convictions involve domestic violence

10   convictions, based on -- growing out of his relationship with

11   Ms. Cox.  What the defendant contends is, since Ms. Cox now

12   supports him in this proceeding and has written a letter in

13   support of him, that the 6 points that are attributed to these

14   convictions should not be treated as being as serious as the

15   points would suggest.

16             I start with the observation that Section 4A1.3, that

17   is invoked here, requires a showing that the defendant's

18   criminal history category substantially overrepresents the

19   seriousness of the defendant's criminal history.  I note that

20   the criminal history category, which is what we focus on with

21   regard to this particular section under the guidelines, is VI.

22   And the Criminal History Category VI is reached by 13 criminal

23   history points.  Mr. Switzer has 17.  So, in essence, what

24   Mr. Switzer is arguing is that the convictions arising out of

25   his relationship with Ms. Cox overstate the seriousness of his

1    criminal history by at least 5 points.  In other words, that

2    there really should only be one criminal history point given to

3    all of these convictions, because that's the only way he would

4    get out of Criminal History Category VI.

5          Having reviewed the presentence report, I do not find,

6    first of all, that these convictions -- that the criminal

7    history substantially overrepresents the likelihood of violence

8    or the seriousness of the conduct.  And I cannot conclude that

9    even if it did result in an overstatement of the seriousness of

10   the criminal history, that it would take it out of Criminal

11   History Category VI, attributing only one criminal history

12   point to convictions that are reflected in paragraphs 37

13   through 46.

14         These convictions, although they arise in the course

15   of a domestic relationship, reflect serious physical injury.

16   They reflect, as is often the case, a change in heart between

17   the individuals involved after the incident is resolved.  But

18   the fact that Ms. Cox now supports the defendant does not in

19   any way, shape, or form reduce the seriousness of the conduct

20   that he engaged in that gave rise to the convictions.

21   Therefore, I find that Criminal History Category VI accurately

22   represents the defendant's criminal history; and I decline to

23   depart downward based on that argument.

24         With a Criminal History Category of VI and an offense

25   level of 17, the guidelines recommend incarceration of 51 to 63

1    months, supervised release of 1 to 3 years, a fine of $5,000 to

2    $50,000, and a special assessment of $100 is mandated.

3         The defendant requests downward departures from this

4    guideline range on several additional grounds.  First of all,

5    under Section 3B1.2, that he engaged in a mitigating role in

6    this offense.  I find that that section is not appropriate

7    because this offense was -- involved only one participant,

8    Mr. Switzer, who was in possession of a firearm.  In order for

9    Section 3B1.2 to apply, as noted in application note 2, the

10   offense must involve more than one participant, because this

11   particular mitigating role ground only applies by comparing the

12   behavior of different participants.  And where there is only

13   one participant, it simply is not applicable.

14        The next argument that is made is made in the context

15   of the defendant's family ties.  This is made both as a

16   departure and a variance argument.  And then there is an

17   argument of post-arrest rehabilitation made as a departure

18   argument and also as a variance argument.  Neither argument

19   gives rise to a departure under the guidelines.  Family ties

20   are a disfavored ground for a departure under the guidelines,

21   and that is because almost always a family is adversely

22   impacted by a defendant's incarceration, almost always.  There

23   is nothing new, there is nothing novel about the fact that

24   Mr. Switzer's family is adversely impacted.  We wish that

25   weren't the case.  I certainly wish that his wife and children

1    were not adversely impacted, but that's a consequence of his

2    behavior.

3            And as to the argument that he was divesting himself

4    of the weapon at the time that he was selling it and that that

5    should be taken into account, the Court finds that that is not

6    a basis either for a departure or for a variance.  That is an

7    argument of convenience made after the fact.  He was possessing

8    it prior to its sale and at the time of the sale, and whether

9    or not ever an arrest occurred after the sale is not important

10   here.

11           As to post-arrest rehabilitation, that's not

12   applicable, because the rehabilitation that is being discussed

13   here, two years on his job with progressing responsibility and

14   increasing responsible conduct with regard to his family,

15   didn't occur post-arrest.  It occurred pre-arrest.  It was

16   during the time period 2009 to 2012.

17           So that brings us, then, to the variance arguments.

18   The variance arguments I understand to be the following:

19           One, that he was trying to get rid of the gun, that

20   this has had an adverse effect on his family, that he has had

21   two years on his job at Navajo, he's progressing, he was

22   increasingly more responsible, he disavowed his prior conduct.

23   Summed up, he grew up.  He acquired a number of convictions

24   that put him in Criminal History Category VI, realized that

25   this was not a productive way to live, changed his behavior in

     1   the last couple of years.

     2          I hear that.  I hear that he doesn't want to be

     3   separated from his family.  I hear that he regrets that what he

     4   did has impacted his family.  If there were a long period of

     5   time of behaving in a lawful fashion, this argument would be

     6   more persuasive; but a couple of years isn't very long.  It

     7   does reflect a change in approach, especially when you have

     8   such a serious criminal history up to 2009; but it isn't a very

     9   long period of time to judge the future behavior of

    10   Mr. Switzer.

    11          I'll give him the benefit of the doubt insofar as I

    12   consider the sentencing objective of protecting the public.

    13   And I do that based upon his statement that he believes that

    14   there are other reasons beside complying with the law that

    15   justify getting rid of a weapon and not having a weapon around

    16   his children.  And I also give him credit for the

    17   accomplishments that he's made over the last couple of years.

    18   But that doesn't get him off the hook as far as a prison term

    19   is concerned.  And that's because the sentencing objectives

    20   also include, reflecting the seriousness of the offense,

    21   promoting respect for the law, adequately deterring criminal

    22   conduct, and providing him with needed educational or

    23   vocational training, medical care, and other correctional

    24   treatment in the most effective manner.

    25          Sentencing is not about deciding who is a good person

1    or a bad person, and it's a very ineffective way to try to

2    judge the future behavior of anyone.  It is a time for being

3    accountable for past events, past behavior; and that's what

4    Mr. Switzer is being held accountable for.  Now, it may in his

5    mind be water far under the bridge because he's changed his

6    approach to life, but he's still accountable for it.  He still

7    was in possession of a gun, and he sold or attempted to sell

8    the gun, and his possession and his attempt to sell were

9    illegal.

10       I believe that a slight variance is appropriate in

11   deference to the interruption in criminal behavior.  I intend

12   to impose a sentence of incarceration of 40 months of

13   imprisonment, followed by 3 years of supervised release.  I

14   find that he lacks the ability to pay a fine, and, therefore,

15   do not intend to impose one.  And in addition, specifically

16   find that the payment of the fine would create hardship for

17   those that are dependent upon him.  And a special assessment of

18   $100 is mandated by statute.

19       Any need for clarification, further explanation,

20   objection, or request for a continuance?

21       *MR. TILL:*  Not from the Government, Your Honor.

22       *MR. WILLETT:*  May I have a moment, ma'am?

23       I guess to the extent that our memorandum contradicts

24   some of the Court's findings, we would maintain an objection on

25   that part.

 1              We would just ask that the Court also consider making

 2     a recommendation for the F.C.I. Florence.

 3              THE COURT:  I decline that request, and I do so as a

 4     matter of consideration both in this case and every other case.

 5              First of all, notwithstanding the fact that

 6     Mr. Willett has told the defendant that it doesn't matter

 7     whether I give a recommendation or not, that doesn't influence

 8     the Bureau of Prisons.  I want -- I do not wish to create any

 9     expectation that it does.  My experience in making

10     recommendations is that the Government -- that the Bureau of

11     Prisons follows them less than half the time.  And therefore,

12     they are essentially meaningless.

13              Secondly, what the Bureau of Prisons takes into

14     account in making an assignment includes the proximity to

15     family, it includes the security concerns and bed space.  As to

16     the second and third considerations, I have no information and

17     cannot assess that.  And finally, part of the sentencing

18     objective here is to provide the defendant with needed

19     educational or vocational training, medical care, or other

20     correctional treatment in the most effective manner.

21              Mr. Switzer, there are a variety of different programs

22     available at different institutions; and I strongly recommend

23     that you focus on the program that is going to provide you with

24     the best skill set when you get out of prison.  Whether you go

25     back to Navajo or you go to some other location to work, you

1     need to come out a better person than you went in.  And

2     selecting or choosing or making -- requesting a recommendation

3     for a location close to your family may be emotionally

4     satisfying at this point; but in the long run, it's not going

5     to help you.  What will help you is having a better skill set.

6              So I strongly recommend that when you meet with the

7     Bureau of Prisons, you arm yourself with information about

8     those facilities that are hopefully close enough for your

9     family to visit and also have the kinds of programs that will

10    aid you once you get out of prison.  That's part of this new

11    responsibility that you're espousing.

12             Any need for further clarification or explanation?

13             *MR. WILLETT:*  No, ma'am.

14             *THE COURT:*  All right.  For the Government?

15             *MR. TILL:*  No, Your Honor.  Thank you.

16             *THE COURT:*  Then having considered both the sentencing

17    objectives and the sentencing factors, and previously having

18    determined the sentence which is sufficient but not no greater

19    than necessary to satisfy those sentencing objectives, pursuant

20    to the Sentencing Reform Act of 1984, it is the judgment of the

21    Court that the defendant, James R.  Switzer, be committed to

22    the custody of the Bureau of Prisons to be imprisoned for a

23    term of 40 months.

24             Upon release from imprisonment, he'll be placed on

25    supervised release for a term of 3 years.  Within 72 hours of

1   release from the custody of the Bureau of Prisons, he will

2   report in person to the probation office in the district to

3   which he is released.  While on supervised release, he will not

4   commit another federal, state, or local crime; he'll not

5   possess a firearm as defined in 18 U.S.C. Section 921; and

6   he'll comply with the standard conditions that have been

7   adopted by the Court.  He'll not unlawfully possess a

8   controlled substance, he'll refrain from any unlawful use of a

9   controlled substance, and he will submit to one drug test

10  within 15 days of release on supervised release and at least

11  two periodic tests thereafter.  He'll cooperate in the

12  collection of DNA as directed by the probation officer.

13          And I find that there are special conditions of

14  supervision that are reasonably related to the factors

15  enumerated in 18 U.S.C. Section 3553(a) and 18 U.S.C. Section

16  3583(d).

17          The special condition that is appropriate in this

18  circumstance is that the defendant participate in and

19  successfully complete a program of testing and/or treatment for

20  substance abuse as approved by the probation officer until such

21  time as he is released from the program by the probation

22  officer.  He'll abstain from the use of alcohol or other

23  intoxicants during the course of treatment.  And to the extent

24  he is able to and directed to by the probation officer, he'll

25  pay for the cost of treatment.

 1            No fine is imposed for the reasons specified.  The

 2     statute mandates the imposition, however, of a special

 3     assessment of $100, which is due immediately.

 4            Mr. Switzer, I advise you of your right to appeal this

 5     sentence.  In order to appeal, you must file a Notice of Appeal

 6     within 14 days after entry of judgment.  If you do not file a

 7     Notice of Appeal within that time period, you lose your right

 8     to appeal.  Now, ordinarily, Mr. Willett would file that Notice

 9     of Appeal for you.  But if he's unable to do so or unwilling to

10     do so, if you request, I'll direct the Clerk of the Court to

11     file the Notice of Appeal for you.

12            Is there any further business to bring before the

13     Court?

14            *MR. TILL:*  No, Your Honor.  Thank you.

15            *MR. WILLETT:*  No, ma'am.

16            *THE COURT:*  Thank you, Mr. Till; thank you,

17     Mr. Willett; thank you to our probation officer, marshal staff,

18     and court staff.  Mr. Switzer will be remanded to the custody

19     of the United States Marshal.  We'll stand in recess.

20            (Recess at 10:28 a.m.)

21                    REPORTER'S CERTIFICATE

22            I certify that the foregoing is a correct transcript from
       the record of proceedings in the above-entitled matter.
23            Dated at Denver, Colorado, this 31st day of October,
       2012.

24                                    s/Therese Lindblom

25                         _____

                           Therese Lindblom,CSR,RMR,CRR